UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION



| | |
|---|---|
| VALLEY QUEEN CHEESE FACTORY, INC., A SOUTH DAKOTA CORPORATION;<br><br>Plaintiff,<br><br>vs.<br><br>OTTER TAIL POWER COMPANY, A MINNESOTA CORPORATION;<br><br>Defendant. | 1:15-CV-01022-CBK<br><br>ORDER DENYING MOTION TO DISMISS, OR ALTERNATIVELY, STAY AND REFER PROCEEDINGS TO THE PUBLIC UTILITIES COMMISION OF SOUTH DAKOTA |

Defendant Otter Tail Power Company moved for dismissal of the above captioned matter for failing to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, staying the case and referring it to the South Dakota Public Utilities Commission ("PUC"). For the following reasons, that motion is denied.

**Background**

Valley Queen Cheese Factory, Inc. manufactures cheese and dairy products in Milbank, South Dakota. Otter Tail Power Company is a Minnesota-based utility company that provides electrical service to Valley Queen. Otter Tail's sale of electricity in South Dakota is regulated by the PUC, and the price and conditions for the sale of electricity are governed by electric rate schedules, or tariffs, approved by the PUC.

At all times relevant, Otter Tail sold electricity to Valley Queen for its electric boiler as well as Valley Queen's factory operations. Electricity to the boiler and the factory were separately metered. From June of 2005 through June of 2010, Otter Tail sold electricity for the electric boiler pursuant to a written contract. On May 29, 2009, Otter Tail informed Valley Queen that the boiler contract would expire June 1, 2009. Otter Tail subsequently met with Valley Queen to discuss options for purchasing electricity. Due to the nature of the service provided for the electric boiler and the factory, Valley Queen had various rate options under the applicable tariffs for delivery of electricity. Valley Queen chose to purchase electricity pursuant to Otter Tail's Large General Service-Time of Day Rate ("LGS-TOD") for both the plant and the boiler starting on July 1, 2009. Effective July 1, 2009, the PUC approved Otter Tail's request for a new rider to its tariff that included a Real Time Pricing ("RTP") rate. The first time Otter Tail offered the LGS-TOD rate and the RTP rate were in the tariff effective July 1, 2009.

Valley Queen alleges that it would have saved electricity costs if it purchased electricity under a different rate than the LGS-TOD rate. Valley Queen alleges that Otter Tail was "legally obligated" to tell Valley Queen what options were available so that Valley Queen could select the most economical rates for the electric boiler and the plant. This present action is based on that allegation.

Otter Tail moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or to alternatively stay the action and refer it to the PUC, at Doc. 11. Otter Tail argues that the applicable tariffs and South Dakota administrative rules only require Otter Tail to advise Valley Queen about the available raters; not to recommend the rate. Valley Queen argues that Otter Tail was legally obligated to, and should have advised Valley Queen that combining the plant and the electric boiler on the LGS-TOD rate was not the most cost effective rate available. Valley Queen also

alleges that Otter Tail was legally obligated to advise that the most economical approach was to bill the main plant at the LGS-RTP rate and bill the boiler at the Controlled Service-Interruptible Load ("LDF"). Valley Queen characterizes its complaint as an effort to seek enforcement of a tariff, whereas Otter Tail characterizes the complaint as an effort to "amend the tariff and create a new duty."

## Standard of Review

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court assumes that all facts in the complaint are true and construes any reasonable inferences from those facts in the light most favorable to the nonmoving party. Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008). In order to decide the motion to dismiss under Rule 12(b)(6), the court may consider the complaint, some materials that are part of the public record, as well as materials embraced by the complaint. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). To survive the motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The factual content in the complaint must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Braden v. Walmart Stores, 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## Discussion

### I.     Otter Tail's Motion to Dismiss

Otter Tail moved to dismiss the complaint for failure to state a claim based upon two independent theories: the "filed rate doctrine" and the "primary jurisdiction doctrine." Valley

3

Queen contends that the "filed rate doctrine" is inapplicable at this point and that the "primary jurisdiction doctrine" does not require dismissal or a referral to the PUC.

Neither side disputes what the "filed rate doctrine" requires. Under the "filed rate doctrine," no seller of energy may collect a rate other than the one filed with and approved by a regulatory agency, and no court may substitute its own judgment for that of that agency. City of Osceola v. Entergy Arkansas, 791 F.3d 904, 2015 U.S. App. LEXIS 11429 (8th Cir. 2015). The issue is the applicability of a filed rate in relation to Otter Tail's motion to dismiss. In other words, what are the obligations of Otter Tail under the rate?

A recent case from the United States Court of Appeals, City of Osceola v. Entergy Arkansas, 791 F.3d 904, 2015 U.S. App. LEXIS 11429 (8th Cir. 2015), although dealing with the Federal Regulatory Commission (FERC), sets out some important principles in considering the "filed rate doctrine." "Issues of interpretation of a contract on file with the Commission are within the Commission's concurrent jurisdiction with the courts." City of Osceola, 791 F.3d 904, quoting Portland Gen. Elec. Co., F.E.R.C. ¶ 61, 009, 61,021 n.14 (19995). The court in Osceola concluded that an interpretation of a rate formula approved by the FERC and whether payments under that formula were proper were not barred by the "filed rate doctrine." City of Osceola, 791 F.3d 904. The case at hand is similar. Valley Queen's complaint asks the court to make a determination on a contractual dispute as to whether the contract created a duty for Otter Tail to inform Valley Queen of a more favorable rate. Under the standard for dismissal set by Bell Atl. Corp., 550 U.S. at 547, dismissal of this case based on either the "filed rate doctrine" or failure to state a claim is, at a minimum, premature.

The court then turns to Otter Tail's contention that the PUC would be more suited to hear the dispute. The court did receive the *amicus curiae* brief filed by the "South Dakota Electric

Utility Companies" filed at Doc. 22  There is no suggestion in the present case that the district court does not have at least concurrent jurisdiction with the PUC.  I am satisfied that there is at least concurrent jurisdiction.  Even when jurisdiction exists in a given case, the court is required to decide whether the agency has what is called primary jurisdiction.  Primary jurisdiction is a common law doctrine used "to coordinate judicial and administrative decision making." Access Telecom. v. Sw Bell Tel. Co., 137 F.3d 605, 608 (8th Cir. 1998).  The Access decision also tells us that courts having jurisdiction may refer a case to the appropriate administrative agency for initial decision.  It also tells us that courts use the doctrine sparingly, trying to avoid the delay and additional expense which would stem from the referral.  Those considerations must be considered by the court in the present case.

"There is no 'fixed formula' for deciding whether an agency has primary jurisdiction over a case; instead courts consider whether 'desirable uniformity' would result from an agency determination and whether the "expert and specialized knowledge' of the agency is needed." United States v. W. Pac. R.R. Co., 325 U.S. 59, 64 (1956)." City of Osceola, 791 F.3d 904.

The FERC has identified at least three factors which the agency considers in deciding whether the agency has primary jurisdiction.  It would seem that it is a matter for the court, not the agency, to decide whether primary jurisdiction exists.  Nevertheless, those three factors are: (1) whether the agency has some special expertise which makes the case "peculiarly appropriate" for agency decision; (2) whether there is a need for uniformity of interpretation of the type of question present in the dispute; and (3) whether the case in important in relation to the regulatory responsibilities of the agency. Ak. La. Gas Co. v. Hall, 7 F.E.R.C. ¶ 61, 175, 61, 322 (1979).

The question under consideration in this case is a question apparently not previously addressed by the PUC.  There is no precedent for the agency to consider.  It is a matter of

5

common knowledge that no member of the PUC is a lawyer and none have any experience as a judge. Whether or not Otter Tailed failed to act in compliance with the tariff is a question not difficult to decide. This court can read and interpret the language to decide what Otter Tail was required to do in dealing with Valley Queen. There is nothing to "regulate", as such. Courts interpret written language every day. Courts decide whether a legal duty exists in every case brought before the court. Federal courts have a duty to decide cases brought before them, including cases in which diversity of citizenship exists and the required amount in controversy is met. While parties cannot stipulate to federal jurisdiction, the parties are entitled to insist upon the court acting promptly to decide a controversy under federal jurisdiction.

While there is also an application pending within the agency to act to answer the question presented, there is no state court proceeding pending. The court takes judicial notice that Valley Queen did file a complaint against Otter Tail with the PUC. However, because the court has determined that it has concurrent jurisdiction and that it is more than suited to addressing the issues presented, I will not stay the proceedings and refer them to the Public Utilities Commission.

Now, therefore IT IS ORDERED:

1. Otter Tail's Motion to Dismiss, or Alternatively, Stay and Refer Issues to the Public Utilities Commission of the State of South Dakota, at Doc. 11 is denied.
2. Otter Tail's Motion for Judicial Notice, at Doc. 14, is granted.

DATED this 7th day of January, 2016.

BY THE COURT:

*Charles B. Kornmann*
CHARLES B. KORNMANN
United States District Judge